UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:10-CV-362

**ANDREE AZZAM**   **PLAINTIFF**

**V.**

**BAPTIST HEALTHCARE AFFILIATES, INC.**   **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the Court upon Defendant's Motion for Summary Judgment. (DN 20). Plaintiff has responded. (DN 23). Defendant has replied. (DN 24). For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

Plaintiff Andree Azzam ("Azzam") was hired by Defendant Baptist Healthcare Affiliates ("BHA") in 1992 as a registered nurse ("RN") in the Medical-Surgical patient care unit. After two years, Azzam transferred to the surgery unit, where she reported to Barbara Ritchie. RNs assigned to surgery at BHA typically work eight-hour shifts, five days per week, Monday through Friday. Additionally, full-time surgical RNs are required to be available one night during each regular workweek and weekends, on a rotating basis, for "call." Call is necessary when emergency situations arise such as gunshot wounds, car wrecks, and cesarean sections. DN 20-2, Azzam Dep. at 40-41 and 106. Weekend call responsibilities begin Friday at 3:00 pm and continue until 7:00 am Monday. While an RN is on call, he or she cannot take any medications that might inhibit his or her ability to report to duty within 30 minutes of receiving a call.

In April 2008, Azzam tendered to BHA a request for leave pursuant to the Family Medical Leave Act for "symptomatic a[trial]-fib[rillation]." A Certification of Physician or Practitioner supporting her request for leave stated that her "A-Fib" condition, which began in 2000, was treated with "Medication-close physician follow-up," did not require hospitalization at the time, and would not interfere with Azzam's ability to work "except when develops A-Fib," when she would require "time available to check . . . A-Fib when it occurs."

On May 6, 2008, while on vacation in northern Illinois to attend the Mastiff Association Dog Show, Azzam was admitted to the emergency room of Centegra Health System where she complained of stroke-like symptoms. Azzam maintains that she suffered a left-hemisphere stroke with resultant aphasia as a sequela, and that the physicians in the emergency room told her she had "a brain bleed." DN 20-2, Azzam Deposition. BHA maintains that Azzam suffered a Transient Ischemic Attack. The medical records from Centegra state that there was a "Probable transient ischemic attack versus cerebrovascular accident likely thromboembolic." DN 20-3. The discharge summary stated that "CT brain without contrast was negative for intracranial bleed and the patient was thought to have nonhemorrhagic acute cerebrovascular accident affecting her right side and speech and presumed to be thromboembolic phenomenon a from cardiac source."[1] The summary further concluded that "Her right sided weakness has completely resolved, however, she continues to have residual expressive aphasia which needs continuation of outpatient speech therapy . . . and further follow-up with her primary M.D." Azzam was released from Centegra on May 11, 2008.

Upon returning from Illinois, Azzam saw her cardiologist, Dr. Adams, who insisted that Azzam see a neurologist before releasing Azzam to return to work without restrictions from a

---

[1] The radiology report confirms that Azzam's CT scan was normal and that there was no extraaxial fluid, no hemorrhage, no mass, and no edema seen in the brain.

"cardiac standpoint." Azzam consulted with a neurologist, Dr. Oates, on June 23, 2008. Azzam told Dr. Oates she had a stroke and was still exhibiting symptoms, but Dr. Oates never performed any laboratory, diagnostic, or radiological tests on her. DN 20-2, Azzam Dep. at 83-84. Dr. Oates did however, treat Azzam by prescribing "medications and neurological exercises."

Azzam modified her previous FMLA request to reflect a Leave of Absence start date of May 12, 2008, with confirmation that Azzam was unable to perform work of any kind. DN 20-4. On July 14, 2008, Dr. Oates cleared Azzam to work for four hours a day, five days a week, with no nights or weekends. Additionally, she was to be in "non-patient, non-critical care areas, doing sedentary light duty activity for the next 4 months until she will be reviewed as to her restrictions." DN 23-7. Then on July 23, 2008, Dr. Oates cleared Azzam for "light duty, no nights, no weekends, 5 hours in 24 hr, 5 out of 7 days for the next 2 months." DN 23-7.

Consistent with Dr. Oates's orders, Azzam returned to work on July 25, 2008 without patient care or call responsibilities. On September 3, 2008, Dr. Oates noted that Azzam "has shown steady improvement" and released Azzam to perform patient care duties subject to the five hours of daily work and "no call" restrictions. On November 3, 2008, Dr. Oates noted that Azzam showed "great improvement" but did not lift the restrictions. Azzam worked five hours a day, five days a week, with no call responsibilities through the end of 2008. During this time, BHA's three other surgical RNs, along with the charge nurse and Barbara Ritchie, continued to assume Azzam's call responsibilities just as they had done since May. Towards the end of the year, the RNs complained about the extra call duties as a result of Azzam's restrictions and staff turnover. DN 20-8, Ritchie Dep. at 82-94. It was agreed that BHA would re-evaluate the situation at the first of the year. *Id.* at 67.

On January 6, 2009, Ritchie and Lynn Rigon met with Azzam to express their concerns about her inability to fulfill the duties of her surgical RN position due to her restrictions. *Id*. at 76-77. At this meeting, Ritchie asked Azzam to "try for one schedule of being able to take call or work a normal workday." *Id*. at 78. Azzam responded by stating that she could not do it until she was cleared by the doctor. DN 23-10, Azzam Dep. at 204. Azzam further testified that after she refused to try returning to a normal schedule, Lynn Rigdon said "Well, then, you're terminated." *Id.* Azzam then asked about the Pre-Admission Testing (PAT) position (which did not require any call duty) that Azzam had previously expressed an interest in. Barbara Ritchie explained that the PAT position had been filled by another individual with seven years of PAT experience.

Azzam's Employee Separation Report stated that the reason for separation was "Dissatisfied w/ Schedule" and that she was "unable to take call which is a requirement for staff RN's in surgery." DN 23-2. The report further provided that Azzam was eligible for re-employment when "able to fulfill essential job functions." *Id*.

Azzam then filed this action, alleging that BHA subjected Azzam to disparate treatment on the basis of her disability or its perception of her disability, and failed to reasonably accommodate her known disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(4) and the Kentucky Civil Rights Act (KCRA). Azzam also alleged discrimination on the basis of age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 641 and the KCRA. Defendant BHA then filed this motion for summary judgment as to all claims set forth in the complaint. In response, Azzam abandoned her claim of age discrimination. Therefore, the only remaining claims are for discrimination on the basis of a disability under the ADA and KCRA.

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**ANALYSIS**

The disability discrimination provisions of the Kentucky Civil Rights Act parallel the requirements of the Americans with Disabilities Act.[2]  *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007).  The Americans with Disabilities Act ("ADA") makes it unlawful for an

---

[2] However, the KCRA retains the ADA**'s** *former* definition of disability. *Compare* KRS § 344.010(4) *with* 42 U .S.C. § 12102(2) (2006). The Court will not assume that the Kentucky legislature, by drafting language in 1992 that mirrored federal law at the time, *see* 1992 Ky. Acts 282, § 1, intended to incorporate federal legislative alterations that occurred in 2008.

employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  To discriminate "on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).  A covered entity can also discriminate on the basis of a disability by "denying employment opportunities to a . . . employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).  The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To establish a prima facie case of disability discrimination, a plaintiff must show that "(1) [s]he is disabled; (2) [s]he is otherwise qualified for the position with or without reasonable accommodation; (3) [s]he suffered an adverse employment decision; (4) [her] employer knew or had reason to know of [her] disability; and (5) [her] position remained open." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir. 1999).  Defendant BHA contends that summary judgment is appropriate because Azzam cannot establish the elements of a prima facie case of discrimination under the ADA because she is neither "disabled" nor a "qualified individual with a disability."

1. **Whether Azzam is Disabled**

BHA argues that Azzam was not disabled under the ADA.[3]  The ADA Amendments Act of 2008 ("ADAAA"), which became effective January 1, 2009, broadened the definition of disability.  The relevant time for assessing the existence of a disability is the time of the adverse employment action.  *See Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 316 (6th Cir. 2001).  Because Azzam alleges she was terminated January 6, 2009, the Court will apply the broadened standards of the ADAAA.  Under the ADAAA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment . . . ."  42 USC § 12102(1).

The first prong of the analysis is to determine whether or not Azzam suffered from a mental or physical impairment.  The EEOC regulations define a physical or mental impairment as "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine . . . ."  29 C.F.R. § 1630.2(h)(1).  Azzam contends that she suffered a left hemisphere stroke with resulting aphasia.  Azzam's medical records from her hospitalization show that she likely suffered a "non-hemorrhagic acute cerebrovascular accident affecting her right side and speech and presumed to be thromboembolic phenomenon from a cardiac source."  Regardless of whether Azzam suffered a stroke or a cerebrovascular accident, it falls within the definition of impairment.

The second prong of the analysis is to determine whether or not this impairment substantially limits a major life activity.  Major life activities include: "caring for oneself,

---

[3] Because the definition of disability is broader under the ADA than the KCRA, the parties focused their attention on whether Azzam is disabled under the ADA.

performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).  Major life activities can also include the operation of a major bodily function, such as neurological and brain functions.  *Id*.  The EEOC Regulations provide that an impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(1)(ii).

The 2008 ADAAA was intended to broaden the scope of those protections and states that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter" and that "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Acts of 2008."  42 U.S.C. § 12102(4)(A) and (B).  Through the amendments, Congress intended to no longer require "that to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'"  Pub. L. No. 110-325 § 2(b)(4) (*quoting Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002)).

Azzam contends that her impairment substantially limited her neurological functions and her abilities to work and to concentrate.  Because Azzam has offered no evidence to support her claims that her impairment substantially limited her neurological functions and her ability to concentrate, the Court will focus its attention on Azzam's argument that she is substantially limited in the major life activity or working.

The evidence regarding Azzam's limitations on working is comprised of Dr. Oates's notes and Azzam's own testimony.  During her deposition, Azzam was asked, "To your knowledge, was there any-ever any treatment-based or even therapeutic reason that you couldn't

work on weekends?" Azzam responded by saying "I would not have gotten my rest. I would not have been able to take any HS medicine," meaning her bedtime medicines of Ambien and Celexa.[4]  DN 23-10, Azzam Dep. at 119-20.  Azzam further testified that in January of 2009 she "was doing her duty well" but still believed that her level of energy was too low to allow her to perform call on weekends.  DN 23-10, Azzam Dep. at 204.  Dr. Oates's progress notes document Azzam's lingering complaints of fatigue and lack of stamina.  At most, Dr. Oates notes and Azzam's testimony show that Azzam suffered from lingering fatigue and a lack of stamina stemming from the stroke/cardiovascular accident that prevented her from working nights and weekends.[5]

Other courts, in cases decided before the ADAAA went into effect, have held that a plaintiff's inability to work a full schedule due to fatigue did not constitute a disability.  In *Eibest v. Planned Parenthood*, 94 F.Supp. 2d 873, 877 (N.D. Ohio 2000), a district court found that a nurse suffering "debilitating fatigue" caused by the Epstein-Barr virus was not disabled because, although her impairment prevented her from working between 5:00 p.m. and 8:00 p.m. on Monday evenings as was required of the entire medical staff,  she was not hindered in her ability to perform nursing tasks for a substantial number of hours during the week.  There, although the "limitation eventually prevented [the plaintiff] from continuing her employment at Planned Parenthood, [the plaintiff] offered no compelling reason for concluding she is significantly restricted in finding a comparable nursing position." *Id*. at 877.

---

[4] Azzam does not contend that her impairment substantially limited the major life activity of sleeping.
[5] The Court agrees with Defendant BHA's argument that fatigue is not a major life activity; however, fatigue is an impairment which may limit a specific major life activity such as working. *See Weixel v. Bd. Of Educ. of City of NY*, 287 F.3d 138, 147 (2d Cir. 2002); *Sussle v. Sirina Prot. Sys. Corp*., 269 F. Supp. 2d 285 (S.D.N.Y. 2003)(" A substantial reduction in energy levels, however, is not a major life activity . . . since fatigue in and of itself does not constitute an activity.").

Although the ADAAA took effect before Azzam was terminated, the revised regulations took effect May 24, 2011.  These revised regulations eliminated the following language:

> With respect to the major life activity of working –
>
> (i)   the term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i) (2010).  Other circuits have held that the revised regulations do not apply retroactively.  *Allen v. SouthCrest Hosp.*, 2011 WL 6394472 at *6 (10th Cir. Dec. 21, 2011); *EEOC v. AutoZone Inc.*, 630 F.3d 635, 641 n. 3 (7th Cir. 2010).

The Interpretive Guidance to Part 1630, which also became effective May 24, 2011, provides that the above language was eliminated because "no other major life activity receives special attention in the regulation, and with the fact that, in light of the expanded definition of disability established by the Amendments Act, this major life activity will be used only in very targeted situations."  "Substantially Limited in Working," Appendix to Part 1630—Interpretive Guidance on Title I of the Americans With Disabilities Act, 29 C.F.R. Pt. 1630, App.  The Interpretive Guidance goes on to explain that the "broad class of jobs" restriction remains in place even after the amendment to the regulations:

> In the rare cases where an individual has a need to demonstrate that an impairment substantially limits him or her in working, the individual can do so by showing that the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities.
> …
> Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working.

*Id.* Therefore, even under the broadened ADAAA language, Azzam still must show that her impairment substantially limits her ability to perform a class of jobs or a broad range of jobs in various classes as compared to most people having comparable training, skills, and abilities.

Azzam does not explain how her fatigue, substantially affected her ability to work in comparison to most people in the general population. Besides the reduced hours and no weekend restrictions, Azzam was not limited in her ability to otherwise perform her job as an RN and she did in fact perform her job. Furthermore, Azzam has not shown that she is significantly restricted in finding a comparable nursing position which does not require "call" responsibilities. Accordingly, Azzam does not have an actual disability or a record of such a disability.

Azzam further argues that "Defendant cannot credibly deny that it regarded her as disabled when it provided reasonable accommodation of Plaintiff's disability for several months before unilaterally and arbitrarily withdrawing the accommodation at the time Plaintiff's employment was terminated." Azzam Response, DN 23, at 9. Under the ADAAA, an individual is regarded as disabled when "the individual has been subjected to an action prohibited by the ADA . . . because of an actual or perceived impairment *whether or not the impairment limits or is perceived to limit a major life activity*." 42 U.S.C. § 12102(3)(A). However, a perceived disability claim may not be based on an impairment that is "transitory and minor," meaning having "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Here, the evidence supports the claim that BHA knew of or perceived Azzam's impairment, a stroke/cardiovascular accident with resulting fatigue. Furthermore, BHA knew at the time of termination that Azzam had not been cleared by her doctor to resume a normal schedule. The ADAAA does not require a plaintiff bringing a claim under the "regarded as"

prong to show the impairment limited a major life activity or that the employer perceived that the impairment limited a major life activity. Accordingly, pursuant to the broadened standards of the ADAAA, the Court finds such evidence sufficient to show that Plaintiff was regarded as disabled.

**2. Whether Azzam was Otherwise Qualified**

BHA next argues that Azzam cannot show that she was "otherwise qualified" for the position of a surgical RN. The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires" and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n). In determining which functions are essential, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). BHA contends that the "call" responsibilities and 8-hour shifts are essential functions of the full-time surgical RN position.

The Court concludes that call responsibilities and 8-hour shifts were essential functions of a surgical RN. It is undisputed that all full-time surgical RNs employed by BHA at Baptist Hospital Northeast are required to perform weekly and weekend "call" responsibilities.[6] This is confirmed by the inclusion of a written "call coverage" requirement in the Surgical Services Personnel Scheduling Policy. DN 23-3. In the position description for a surgical RN, adhering to departmental policies is listed as a principal duty and responsibility. DN 23-3 and DN 23-4.

---

[6] Azzam acknowledged such in her deposition. DN 20-2, Azzam Dep. at 40-41.

Having a surgical RN be available at all times is necessary in order to provide adequate patient care in the case of emergency situations. While Azzam was restricted from performing her call responsibilities, the three other surgical RNs covered a pro rata share of Azzam's call responsibilities in addition to their own call responsibilities. At times, managerial employees Mary Lynn Anthony and Barbara Ritchie would pitch in to lessen this burden. This continued from the time Azzam returned to work on July 25, 2008 until she was terminated January 6, 2009. Thus, for over five months, the call responsibilities of the other three RNs increased considerably. According to the EEOC regulations, one of the several reasons for which a job function may be considered essential is "because of the limited number of employees available among whom the performance of that function can be distributed." 29 C.F.R. § 1630.1(n). Accordingly, the call responsibilities and 8-hour shifts are not merely marginal to the surgical RN position, but are fundamental to the position in order to provide adequate staffing levels for patient care at all times.

At the time Azzam was terminated, she refused to attempt to return to a normal schedule and assume call duty and stated that she could not do so. Although Azzam sought relief from these responsibilities entirely until her physician lifted her restrictions or reassignment to the PAT position,[7] she was not entitled to reasonable accommodation because she only qualified as disabled under the "regarded as" prong. 42 U.S.C. § 12201(h). Although BHA allowed Azzam to work a reduced schedule and avoid call duties following her stroke, "the ADA does not require employers to accommodate individuals by shifting an essential job function onto others," *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719 (6th Cir. 2000), or by creating a position to accommodate a disabled employee. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d

---

[7] It is unclear whether Azzam sought reassignment to the PAT position at a time when it was vacant because she did not apply for the position. However, during the January 6, 2009 meeting, when Azzam again requested to fill the PAT position, it was no longer vacant.

1173, 1187 (6th Cir. 1996).  Because Azzam could not perform the essential functions of a surgical RN, she was not "otherwise qualified" for the position.

## CONCLUSION

Because Azzam cannot show that she was otherwise qualified for the position as a surgical RN, she cannot establish a prima facie case of disability discrimination under the ADA or the KCRA.  Therefore, there is no genuine dispute as to any material fact and Defendant BHA is entitled to summary judgment as a matter of law.  For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.  A separate order shall issue.